**LEE LITIGATION GROUP, PLLC**
CK Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TAMRA SIMPSON, and JANE DOE, *on behalf of themselves, FLSA Collective Plaintiffs, and the Class,*<br><br>Plaintiffs,<br><br>v.<br><br>VISITING NURSE SERVICE OF NEW YORK d/b/a VNS HEALTH, and<br>NEW PARTNERS, INC.<br>d/b/a VNS HEALTH PERSONAL CARE,<br><br>Defendants. | Case No.:<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiffs, TAMRA SIMPSON, and JANE DOE ("Plaintiffs"), on behalf of themselves and others similarly situated, by and through their undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendant VISITING NURSE SERVICE OF NEW YORK d/b/a VNS HEALTH, and NEW PARTNERS, INC. d/b/a VNS HEALTH PERSONAL CARE (each individually a "Defendant" and, together, the "Defendants") and state as follows:

## INTRODUCTION

1.      Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that they and others similarly situated are entitled to recover from

Defendants: (1) unpaid wages, including unpaid overtime, due to timeshaving, (2) unpaid overtime wages due to a failure to compensate at a blended overtime rate, (3) liquidated damages, and (3) attorneys' fees and costs.

2.      Plaintiffs further allege, pursuant to the New York Labor Law ("NYLL"), that they and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including unpaid overtime, due to timeshaving, (2) unpaid overtime wages due to a failure to compensate at a blended overtime rate, (3) unpaid call-in pay, (4) statutory penalties, (5) liquidated damages, and (5) attorneys' fees and costs.

3.      Defendants are non-profit corporations which collectively operate the non-profit organization known as the "VNS Health" (or "VNS"). Defendants' VNS provides various home care service, including senior care, rehabilitative care, and hospice care, throughout New York State ("Clients").

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

5.      Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391, as Defendants' headquarters, where the policies and procedures giving rise to this action were set, is located at 220 East 42nd Street, New York, NY 10017.

## PARTIES

6.      Plaintiff TAMRA SIMPSON is a resident of Bronx County, New York.

7. Defendant VISITING NURSE SERVICE OF NEW YORK is a domestic not-for-profit corporation organized under the laws of New York, with a headquarters located at 220 East 42nd Street, New York, NY 10017.

8. Defendant NEW PARTNERS, INC. is a domestic not-for-profit corporation organized under the laws of New York, with a headquarters located at 5 Penn Plaza, 20th Floor, New York, NY 10001.

9. Defendant VISITING NURSE SERVICE OF NEW YORK ("VNSNY")owns and operates VNS Health, a non-profit organization dedicated to providing a multitude of social and economic services to clients throughout the State of New York.

10. One of the services that Defendant VNSNY provides is VNS Health Personal Care, a licensed home care services agency  program ("VNSHPC"), which Defendant VNSNY operates and manages through Defendant NEW PARTNERS, INC. ("NPI"). *See* **Exhibit A**, New York State Department of Health's Licensed Home Care Services Agency database entry for VNSHPC.

11. Defendant VNSNY directly controls Defendant NPI. *See* **Exhibit B**.

12. Defendant VNSNY has no direct controlling entity. *Id*.

13. Defendant NPI's primary purpose is to provide Defendants' home care services. *See* **Exhibit A**.

14. For home health aides and home attendants employed by Defendants, including Plaintiffs, VNS Health Personal Care is listed on their pay stubs, and they are managed by Defendant NPI, for the work they perform for Defendants. *See* **Exhibit C**, sample of Plaintiff TAMRA SIMPSON's paystubs.

15. At all relevant times, each Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA.

16.     At all relevant times, Plaintiffs, FLSA Collective Plaintiffs, and Class Members had an employment relationship with Defendants under the FLSA and the NYLL.

17.     At all relevant times, the work performed by Plaintiffs, FLSA Collective Plaintiffs, and Class Members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

18.     Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former direct support professionals, home attendants, and certified home health aides employed by Defendants on or after the date that is six (6) years before the filing of the Complaint ("FLSA Collective Plaintiffs").

19.     At all relevant times, Plaintiffs and FLSA Collective Plaintiffs have been and are similarly situated, have had substantially similar job requirements and pay provisions, and have been and continue to be subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules—all of which have culminated in a willful failure and refusal to pay Plaintiffs and FLSA Collective Plaintiffs for their proper wages, including overtime, due to a policy of time-shaving. Plaintiffs' claims stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

20.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

**RULE 23 CLASS ALLEGATIONS – NEW YORK**

21.    Plaintiffs bring claims for relief pursuant to the Federal Rule of Civil Procedure ("F.R.C.P.") 23, on behalf of all current and former direct support professionals, home attendants, and certified home health aides employed by Defendants on or after the date that is six (6) years before the filing of the Complaint (the "Class" or "Class Members").

22.    Class Members are readily ascertainable. The number and identity of Class Members are determinable from the records of Defendants. The hours assigned and worked and the position held may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

23.    The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

24.    Plaintiffs' claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All Class Members were subjected to the same corporate practices of Defendants, including (i) failing to pay wages, including and overtime compensation, due to time-shaving (ii) failing to pay call-in pay, (iii) failing to pay all overtime compensation due to a failure to compensate employees using a blended overtime rate, (iv) failing to provide proper wage and hour notices upon hiring and as required thereafter pursuant to the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class Members similarly, and

Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiffs and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures by Defendants.

25.    Plaintiffs are able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation as well as employment litigation and have previously represented plaintiffs in wage and hour cases.

26.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of the wage and hour litigation where individual Class Members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their

interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

27.    Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

28.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members, including:

a)    Whether Defendants employed Plaintiffs and Class Members within the meaning of the New York law;

b)    What were and are the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiffs and Class Members properly;

c)    At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiffs and Class Members for their work;

d)    Whether Defendants properly notified Plaintiffs and Class Members of their hourly rate and overtime rate;

e)    Whether Defendants paid Plaintiffs and Class Members the proper overtime premium for all hours worked in excess of forty (40) each workweek;

f) Whether Defendants operated their business with a policy of failing to pay Plaintiffs and Class Members for all hours worked, including overtime, due to off-the-clock work;

g) Whether Defendants properly compensated Plaintiffs and Class Members with their call-in pay;

h) Whether Defendants provided to Plaintiffs and Class Members proper wage and hour notices at date of hiring as required under the New York Labor Law; and

i) Whether Defendants provided proper wage statements informing Plaintiffs and Class Members of their proper overtime rate of compensation and other information required to be provided on wage statements with each payment of wages, as required under the New York Labor Law.

## STATEMENT OF FACTS

*Plaintiff TAMRA SIMPSON*

29. On or around December 2022, Plaintiff TAMRA SIMPSON ("Plaintiff SIMPSON") was hired by Defendants to work as a Certified Home Health Aide for Defendants' home attendant program. Plaintiff SIMPSON left went on leave in or around February 2025 and left employment with Defendants in or around May 2025.

30. Throughout her employment, Plaintiff SIMPSON was assigned by Defendants to work at the home of Defendants' Clients and attend to their health and household needs. Plaintiff SIMPSON's duties as a Certified Home Health Aide consisted of assisting individuals with daily living activities, including, but were not limited to, grocery shopping, managing doctor's appointments, showering, and meal prepping.

31.    Defendants controlled Plaintiff SIMPSON's scheduling, including Plaintiff's working hours and paid and unpaid vacations, as well as all benefits provided to Plaintiff. If Plaintiff SIMPSON needed to leave early or make any changes to her schedules, Plaintiff would be required to discuss it with the Defendants—not the Clients. Similarly, Clients would contact Defendants to schedule a Certified Home Health Aide to come to their houses to perform their duties and cancel any appointments, not Plaintiff SIMPSON directly.

32.    Not only were Defendants in charge of Plaintiff SIMPSON's schedule, but Defendants also set up and monitored Plaintiff's clock-in and clock-out system. Defendants required Plaintiff SIMPSON to clock-in by an app on her personal phone, or by a number set up by Defendants to get which connected to Defendants' telephonic automated clocking system.

33.    In accordance with Defendants' policy, if Plaintiff SIMPSON needed to call out sick, she would be required to request the time off from Defendants, not the Clients.

34.    Plaintiff SIMPSON also discussed her payrates and pay raises directly with Defendants, and not the Clients.

35.    Plaintiff SIMPSON's paystubs are issued by Defendants. Additionally, if Plaintiff SIMPSON found any mistakes regarding her paid wages, Plaintiff was required to contact Defendants, not the Clients.

36.    Defendants also set the payroll and employment policies to be followed by Plaintiff SIMPSON during her employment.

37.    Throughout her employment, Plaintiff SIMPSON was compensated at various hourly rates, on a client-by-client basis. Most recently, she was paid an average of $18.25 per hour. FLSA Collective Plaintiffs and Class Members were paid at similar hourly rates.

38.     Throughout her employment, Plaintiff SIMPSON had a varied schedule, depending on which Client was assigned to her. This meant she would work three (3) to twelve (12) hours per day, or anywhere in between. This resulted in weeks in which Plaintiff SIMPSON worked more than forty (40) hours per week. For example, from the pay period beginning on May 27, 2023, Plaintiff SIMPSON worked a total of forty-three (43) hours. FLSA Collective Plaintiffs and Class Members worked similar schedules.

39.     Defendant also underpaid Plaintiff SIMPSON, potential collective members, and putative class members due to Defendant's failure to compensate employees at a blended overtime rate pursuant to 29 C.F.R. § 778.115 and NYLL. As an example for the week ending on April 28, 2023, Plaintiff SIMPSON was paid at two different pay rates for regular hours. Her pay rates for regular hours that pay period were: $19.10 and $18.00. Plaintiff SIMPSON's overtime rate was improperly calculated as $27.10. The correct blended overtime rate is $27.41. FLSA Collective Plaintiffs and Class Members were similarly paid at the wrong overtime rate for overtime hours in pay periods when they received multiple pay rates.

*Timeshaving Claims*

40.     At all relevant times, Plaintiffs, FLSA Collective Plaintiffs and Class Members were required to clock in and out for their shifts using Defendants' inherently problematic clocking system. Defendants required Plaintiffs, FLSA Collective Plaintiffs and Class Members to either to clock in and out using Defendants' app on their personal phone or use their assigned Client's phone to clock in and out by calling a phone number on which Defendants set up as their timeclock system.

41.     Regardless of the system of clocking in or out, Plaintiffs saw that their worked hours were timeshaved and that they were only paid for their scheduled hours. Plaintiffs

consistently saw that if they had arrived at Clients' homes, clocked in, and worked earlier than their scheduled shift, they would not be paid according to their earlier clock-in hours, but rather for their scheduled shift. Plaintiffs also consistently saw that if they had continued working past their scheduled shift, depending on Clients' needs, and clock out later, they would not be paid according to their later clock-out hours. FLSA Collective Plaintiffs and Class Members were similarly timeshaved and paid according to their scheduled hours, instead of their worked hours.

42.     Plaintiffs were, on average, timeshaved fifteen (15) minutes pre-shift, and ten (10) to fifteen (15) minutes post-shift per shift. FLSA Collective Plaintiffs and Class Members were similarly timeshaved pre-shift and post-shift hours.

43.     Depending on Clients and their needs, Plaintiffs would often transport Clients to doctors' offices, clinics, hospitals, urgent care facilities, or Emergency Rooms, and worked beyond their scheduled shift, as it was practically impossible for Plaintiffs to leave Clients unaccompanied in a health facility. Defendants did not compensate Plaintiffs for all hours worked for this purpose. Plaintiff CAMPBELL recalls that she was in the doctor's office for two (2) hours past her shift for a Client and Defendants only paid her for one (1) hour. Thus, even if it was recorded that Plaintiffs worked beyond their scheduled shift, Defendants failed to compensate Plaintiffs for all their worked hours. Defendants similarly failed to compensate FLSA Collective Plaintiffs and Class Members for all hours worked.

44.     Defendants' system of only paying for scheduled hours as opposed to the actual hours worked and recorded by Plaintiff, FLSA Collective Plaintiffs, and Class Members, is inherently unfair and in no way protects their Federal and New York State rights.

45.     Defendants are aware of the shortcomings of its system and the constant difficulties faced by Plaintiff, FLSA Collective Plaintiffs, and Class Members.

45.

*Call-in Pay Claims*

46.     Plaintiffs' schedules were solely under the control of Defendants. Defendants would determine the Clients to which Plaintiffs would be assigned and the hours for which Plaintiffs would work. Clients would correspond with Defendants, not Plaintiffs, to set their appointments and cancel appointments, if necessary. Defendants similarly controlled the schedules of FLSA Collective Plaintiffs and Class Members.

47.     However, three (3) to four (4) times per month, Plaintiffs would show up to a Client's house to start work, according to the schedule set by Defendants, but would be informed that the Client had cancelled their assignment with Defendants, sometimes weeks ago. Plaintiffs would then have no choice but to go home or wait until the next assignment.

48.     During her their employment, Plaintiffs checked their schedule on a daily basis, always confirming the night before. However, they would consistently be faced with Defendants' scheduling issues where Plaintiffs would go to a Client's house and be told by the Client that the appointment had been cancelled, oftentimes days or weeks beforehand. Plaintiffs were often

49.48.  For example, for Thanksgiving, Plaintiff CAMPBELL had worked a twelve (12) hour shift overnight and had to rush to a new client at 9:00 p.m., only to be told by the Client, "I don't need anyone today, I already told the agency 3 weeks ago." Plaintiff CAMPBELL was not informed of this such cancellations in the three weeksadvance time between the cancellation and the appointment and Defendants made no attempt to inform Plaintiffs of the cancellation or properly adjust her their schedules to account for the cancellation.

50.49.  Similarly, Class Members would be scheduled for an assignment, go to a Client's house, and be informed of a cancellation that Defendants had failed to properly inform them of. Class Members were similarly forced to go home or wait for their next assignment.

51.50.  During all relevant time periods, Defendants did not provide Plaintiffs and Class Members with call-in pay for shifts in which Plaintiffs and Class Members would show up for their scheduled assignment, but forced to go home or wait due to cancellations about which Defendants did not timely inform Plaintiffs.

*WTPA Claims*

52.51.  Additionally, Defendants did not provide Plaintiffs with proper wage statements at all relevant times. Similarly, Class Members did not receive proper wage statements, in violation of the NYLL.

53.52.  Defendants never provided Plaintiffs with a proper wage notice as required by the NYLL. Similarly, Class Members were never provided with proper wage notices.

54.53.  In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs*., 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

~~55.~~54.  Here, Defendants' failure goes beyond generating a risk of harm to Plaintiffs and Class Members. Defendants' conduct actually harmed Plaintiffs and Class Members. Defendants' failure to provide wage notices and paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiffs' and Class Members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

~~56.~~55.  Had the wage statements Defendants provided to Plaintiffs and Class Members accurately listed the total number of hours Plaintiffs and Class Members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did not correspond to the hours the employee actually worked. Either possibility would have allowed Plaintiffs and Class Members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

~~57.~~56.  The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiffs and Class Members. This delayed payment caused Plaintiffs and Class Members to struggle to pay bills and other debts.

58.57.  Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by NYLL.

59.58.  The direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. See *Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, at *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-21 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.*, 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").1

60.59.  The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. See *McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, at *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400

---

1 It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains:  "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

(1997)); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

61.60.  "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, 2023 U.S. Dist. LEXIS 38163, at *18 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y., LLC*, 2023 U.S. Dist. LEXIS 122504, at *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 (S.D.N.Y. July 14, 2022)).

62.61.  Here, it is clear that Defendants' failure to provide Plaintiffs and Class Members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours been accurately reported for a given pay period, Defendants' automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiffs and Class Members. That, in turn, would have increased Plaintiffs' and Class Members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiffs with Article III standing.

63.62.  Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay

their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

64.63. The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiffs and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiffs and Class Members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

65.64. Whether or not any Class Members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

66.65. The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks

credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.

All of this means that the plaintiffs' real interest lies in ensuring that the *Witvoets* make the proper reports of their income. *Id.*

67.66. Here, the problem is not merely challenging but insurmountable. Plaintiffs and Class members cannot even attempt to have their earnings report corrected because Defendants *did* report what they actually paid Plaintiffs and Class Members. The problem, rather, is that Plaintiffs and Class Members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiffs were irreversibly injured with respect to his social security benefits as soon as Defendants sent his W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

68.67. Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiffs and Class Members with wage notices and accurate wage statements, in violation of the NYLL.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACTON

## ON BEHALF OF PLAINTIFF AND FLSA COLLECTIVE PLAINTIFFS

69.68. Plaintiffs reallege and incorporate all the above allegations as fully set forth herein.

70.69. At all relevant times, Defendants were and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the

FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

71.70. At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of the FLSA.

72.71. At all relevant times, Defendants had gross annual revenues in excess of $500,000.00.

73.72. At all relevant times, Defendants willfully violated Plaintiffs' and FLSA Collective Plaintiffs' rights by failing to pay them wages, including overtime, in the lawful amount for all hours worked due to a policy of time-shaving, and failure to pay blended overtime rates, in violation of the FLSA.

74.73. Records, if any exist, concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs are in the possession and custody of Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, Plaintiffs will then seek leave of Court to amend this Complaint to set forth the precise amount due.

75.74. Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under the FLSA.

76.75. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (*i.e.*, double) damages pursuant to the FLSA.

77.76. Due to the intentional, willful, and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, including overtime, due to time shaving, and an equal amount as liquidated damages.

78.77.  Plaintiffs and FLSA Collective Plaintiffs are also entitled to an award of their reasonable attorneys' fees and costs pursuant to the FLSA.

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

## ON BEHALF OF PLAINTIFF AND CLASS MEMBERS

79.78.  Plaintiffs reallege and incorporate all the above allegations as fully set forth herein.

80.79.  At all relevant times, Plaintiffs and Class Members were employed by Defendants within the meaning of the New York Labor Law §§ 2 and 651.

81.80.  At all relevant times, Defendants had a policy and practice of that failed to pay Plaintiffs and Class Members for all hours worked, due to time-shaving and failure to pay proper blended overtime rates.

82.81.  At all relevant times, Defendants had a policy and practice of failing to pay Plaintiffs and Class Members their call-in pay, in direct violation of the New York Labor Law.

83.82.  Defendants failed to provide a proper wage and hour notice, on the date of hiring and annually, to all non-exempt employees in direct violation of the New York Labor Law.

84.83.  Defendants failed to provide proper wage statements with every payment issued to Plaintiffs and Class Members, as required by New York Labor Law § 195(3).

85.84.  Due to Defendants' New York Labor Law violations, Plaintiffs and Class Members are entitled to recover from Defendants their unpaid wages, including overtime hours, due to time shaving, reasonable attorneys' fees, liquidated damages, statutory penalties, and costs and disbursements of this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves, FLSA Collective Plaintiffs, and Class Members, respectfully requests that this Court grant the following relief:

a.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

b.  An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

c.  An award of unpaid compensation due to time-shaving under the FLSA and NYLL;

c.d. An award of unpaid compensation due to Defendants' failure to compensate employees at the proper blended overtime rate;

d.e. An award of unpaid call-in pay due under the NYLL;

e.f. An award of statutory penalties as a result of Defendants' failure to comply with the NYLL wage notice and wage statement requirements;

f.g. An award of statutory penalties as a result of Defendants' failure to comply with wage statement and notice requirements under the NYLL;

g.h. An award of liquidated damages as a result of Defendants' willful failure to pay all wages pursuant to the FLSA and NYLL;

h.i. An award of pre-judgment and post-judgment interest, costs, and expenses of this action, together with reasonable attorneys' and expert fees;

i.j.  Designation of Plaintiffs as Representatives of the FLSA Collective Plaintiffs;

j.k.  Designation of this action as a class action pursuant to F.R.C.P. 23;

k.l. Designation of Plaintiffs as a Representatives of the Class;

l.m.       Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.

Dated: October 2, 2025fOctober   , 2025                    Respectfully submitted,

                                                By:    */s/ C.K. Lee*_____
                                                       C.K. Lee, Esq.

                                                       **LEE LITIGATION GROUP, PLLC**
                                                       C.K. Lee (CL 4086)
                                                       Anne Seelig (AS 3976)
                                                       148 West 24th Street, 8th Floor
                                                       New York, NY 10011
                                                       Tel.: 212-465-1188
                                                       Fax: 212-465-1181
                                                       *Attorneys for Plaintiffs,*
                                                       *FLSA Collective Plaintiffs,*
                                                       *and the Class*